# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**WILLIAM K. GOODE,**

             **Plaintiff,**               **CIVIL ACTION NO. 06-14804**

     **vs.**

                                 **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF**            **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

             **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:**     This Court recommends that Defendant's Motion for Summary Judgment be GRANTED, that Plaintiff's Motion for Summary Judgment be DENIED, and that Plaintiff's Complaint be DISMISSED, as there was substantial evidence on the record that Plaintiff remained capable of performing a significant number of jobs in the economy.

\*\*\*

Plaintiff filed applications for Disability and Disability Insurance Benefits and Supplemental Security Income on February 21, 2003, alleging that he had been disabled and unable to work since July 19, 2000 due to an injury to his left shoulder, gout, high blood pressure and heart problems.[1] (TR 66-68, 87, 94). The Social Security Administration denied benefits. (TR 53). A requested *de novo* hearing was held on January 19, 2005 before Administrative Law Judge (ALJ) Henry Perez,

---

[1] Plaintiff filed a prior application for disability insurance benefits and supplemental security income on August 24, 2000 alleging disability from July 19, 2000. (TR 40). The prior application was denied by the ALJ in a decision dated January 24, 2002. (TR 17, 37, 40-46). The decision was not appealed so it became the final determination of the Commissioner. The onset date in this matter is January 25, 2002.

Jr. who subsequently found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income because he was not under a disability at any time through the date of his August 19, 2005 decision. (TR 26, 275). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 7). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits and supplemental income was supported by substantial evidence on the record.

Plaintiff was fifty-two years old at the time of the administrative hearing. Plaintiff testified that he had an eighth grade education, however, it was determined in the 2002 decision that Plaintiff has a high school education[2]. (TR 44, 45, 280). Plaintiff worked as a truck driver from 1975 until 2000. (TR 87, 94). Plaintiff has not engaged in any substantial gainful activity since July 19, 2000. (TR 87). Plaintiff is divorced, has two children and lives with his sister. (TR 279).

Plaintiff reports that he suffers from an injury to his left shoulder resulting from a fall in which he tore his rotator cuff. (TR 282). The injury was treated with surgery and pins were put in the shoulder. (TR 282). Plaintiff also complains of high blood pressure, prior heart attacks, gout in his legs, angina and depression. (TR 86, 94, 282). He reports pain in his arms, shoulders, neck, right elbow, knees, ankles, feet, hands, knuckles and lower back that comes and goes on a daily basis and lasts from one to two hours at a time. (TR 95). Medication is only helpful sometimes. (TR 96). Plaintiff alleges that he cannot lift anything over five pounds with his left arm, he suffers shortness of breath, difficulty walking and standing due to gout in his legs, and suffers blackouts due to high blood pressure. (TR 86). Plaintiff testified that he did not tell his doctors about the blackouts when

---

[2] The unsigned Disability Report dated February 21, 2003 indicates that Plaintiff completed tenth grade. (TR 92, 93). Further statements conclude that he dropped out of school in the ninth grade. (TR 143). Plaintiff testified that he attended the eighth grade. (TR 280).

they started and he did not tell his doctors about his problems with shortness of breath.  (TR 287, 289).  Plaintiff testified that he also has trouble with his memory.  (TR 287, 288).

Plaintiff reports that he takes Paxil for his depression.  (TR 94).  He also reports taking Norvasc, Nitroglycerin, Aspirin, Hydrocodone, Metoprolol, Indocin, Probenecid, Colchicine, Tylenol, Aleve, Hydrochlorothiazide, Allopurinol, Vicodin and Clonidine.  (TR 114, 121-22).  Plaintiff reports that his medications cause drowsiness, dizziness, sore throat and impaired vision.  (TR 105, 114).

Plaintiff testified that his sister filled out most of the Social Security forms for him because he did not understand many of the items on the forms.  (TR 281).  However, he reports that he reads the newspaper sometimes, for approximately fifteen minutes at a time.  (TR 117).  He testified that he can read and write, but he does not understand some words and uses a dictionary when necessary.  (TR 281).  Plaintiff reports that in his prior work as a truck driver he had a CDL license and he completed reports and forms when delivering chemicals.  (TR 87, 88, 280).

Plaintiff reported on March 5, 2003 that he can walk 2 ½ to 3 blocks on a level surface without stopping before he as shortness of breath, chest pain and gout.  (TR 96, 112).  He uses crutches when his gout flairs up.  (TR 97).  He is able to climb ten stairs at a normal pace without resting.  (TR 112).  He reported that he can stand for fifteen to twenty minutes at a time, sit for two to three hours at a time and has limitations in lifting and moving items because he has "no strength."  (TR 97).  Plaintiff reports that he has no strength in his left arm since his surgery.  (TR 118).   At the hearing Plaintiff testified that he is only able to sit for about one hour before his back starts to bother him.  (TR 292).  He does not do any household chores and reports that his sister helps him due to his pain.  (TR 113, 116).  He reports trouble sleeping and problems with shaving, grooming and hair care because of pain in his shoulder.  (TR 113).  Plaintiff testified that he showers, but on

a "bad day" be may need help from his children to get dressed. (TR 293). Plaintiff testified that he

falls asleep throughout the day. (TR 295). Plaintiff sometimes visits with friends but he does not

stay too long because he cannot prop his feet up or lay down when his pain begins. (TR 294).

At the hearing, Plaintiff used a cane and reported that he uses it most of the time because his

knees and feet bother him. (TR 291). Plaintiff testified that he can lift ten or fifteen pounds using

both hands together but that he can't really hold anything in his left hand. (TR 291-92).

Plaintiff's friend of twenty years completed a Daily Activities report and reported that

Plaintiff does not do "anything" because he is depressed. (TR 106). He has one friend and does not

have any hobbies. (TR 106, 107, 117). He can drive, yet does so seldomly. (TR 108, 280). The

friend reports that Plaintiff sleeps six hours daily, he needs help with cooking and his grooming and

attire are "good." (TR 109-11).

**Medical Records and Assessments**

On August 2, 2000 Plaintiff underwent surgery to repair a torn left shoulder rotator cuff. (TR

146). Plaintiff had physical therapy following the surgery. (TR 145, 150-74).

On January 31, 2002 Plaintiff was examined at the Detroit Medical Center for complaints

of pain and swelling in his left foot. (TR 218). On March 12, 2002 Marie Nelson, D.P.M. examined

Plaintiff for painful calluses bilaterally. (TR 216). Dr. Nelson debrided all the hyperkeratotic

lesions and recommended surgical correction of Plaintiff's left fifth toe hammertoe deformity. (TR

216). Dr. Nelson noted that Plaintiff's Health Source insurance does not normally cover podiatry

surgery and recommended other options. (TR 216).

Plaintiff was treated at the Detroit Medical Center and Sinai-Grace Hospital from March 4,

2003 through September 29, 2003. (TR 197). On March 4, 2003 Plaintiff reported numbness in his

back and neck and pain in his right arm. (TR 214). Plaintiff reported that the Vicodin was causing

4

sleepiness and Celebrex, Tylenol #3 and Motrin were not helping with the pain. (TR 214). The attending physician noted tenderness in the shoulders and back and radiculopathy. (TR 214). The record contains notations "refer neurosurgery" and "[r]efer for sigmoidoscopy." (TR 214).

On March 31, 2003 upper back tenderness was noted. (TR 211). On April 16, 2003 Plaintiff underwent an echocardiography which revealed moderate concentric left ventricular hypertrophy. (TR 204). An April 16, 2003 x-ray of Plaintiff's left shoulder revealed a moderate degenerative change. (TR 202, 205). "There is degenerative change of the acromioclavicular joint with sclerosis and cystic change involving the greater tuberosity and minimal spurring of the glenoid rim. No other significant changes are seen." (TR 205). An April 16, 2003 x-ray of the cervical spine revealed "minimal narrowing of the fourth and fifth intervertebral spaces" and "very mild spurring of anterior margins of all cervical segments." (TR 206). The diagnosis was mild cervical spondylosis. (TR 206).

On July 22, 2003 Plaintiff complained of neck, shoulder and leg pain which he reported having for two to three months prior and requested his prior x-ray results and medication refills. (TR 201). It was also noted that Plaintiff had cervical radiculopathy. (TR 201). Plaintiff reported that he was seeing a podiatrist for his leg pain, which emanated from his foot to his hip. (TR 201). It was noted that Plaintiff's pain is relieved with Vicodin. (TR 201).

On August 6, 2003 Plaintiff underwent a Dobutamine Echocardiography. (TR 200). Cardiologist C. Schooley, D.O. concluded that the test was nondiagnostic due to submaximal heart rate and noted "[n]o ischemia at heart rate achieved." (TR 200). He further noted "[h]ypertensive blood pressure response" and "[n]o chest pain or arrhythmia." (TR 200). On September 29, 2003 Plaintiff again complained of neck and back pain and requested pain medication. (TR 198). The

notes indicate that Plaintiff had right shoulder, neck and low back pain and was taking Vicodin for the pain. (TR 198). Plaintiff's pain was exacerbated by moving his right shoulder. (TR 198).

On April 6, 2003 Ernesto H. Bedia, M.D. examined Plaintiff for evaluation of high blood pressure, his heart and arthritis. (TR 181). Plaintiff reported having chest pain twice a week in the anterior chest. (TR 181). Plaintiff reported that he took nitroglycerin to ease the pain, but it did not relieve it completely. (TR 181). Dr. Bedia noted no shortness of breath on exertion or at rest. (TR 181). Dr. Bedia diagnosed Plaintiff with mild hypertension, atypical chest pain, arthralgia right elbow and a history of gout. (TR 183). Dr. Bedia noted that the chest pain is related to movement of the chest and that there were no signs of congestive heart failure. (TR 183). Plaintiff ambulated with a stable gate and did not use a walking aid. (TR 183).

On April 23, 2004 Plaintiff went to the emergency room at Providence Hospital for pain in his left knee. (TR 187-88). Rubab Huq, M.D. noted that the left knee was "somewhat edamatous and erythematous" with soft tissue swelling. (TR 189). Plaintiff was unable to move his left knee without pain and it was "tender on palpation over the patella." (TR 189). Dr. Huq noted Plaintiff's history of gout. (TR 188). An X-ray of the left knee showed no fracture, density distal femur and a possible bone infarct and/or enchondroma/chondrosarcoma. (TR 189). It was noted that an MRI was necessary for confirmation. (TR 189). Plaintiff was given Catapres, Vicodin, Motrin and Maalox and discharged. (TR 189).

Plaintiff was treated at Professional Medical Center from June 2004 through January 12, 2005. (TR 238-48). On June 9, 2004 Plaintiff complained of neck and back pain, gout and high blood pressure. (TR 245). The treating source prescribed Vicodin. (TR 248). On June 16, 2004 radiologist Pradip Shah, M.D. diagnosed degenerative changes of the lumbar spine with degenerative disc disease changes at L5-S1 and degenerative changes of the left knee. (TR 244).

On August 27, 2004 Plaintiff presented with knee and back pain and swollen feet. (TR 243). The treating source noted tenderness in the knees with greater crepitus in the left knee than the right knee. (TR 243). The treating source prescribed Vioxx. (TR 243).

On November 8, 2004 Plaintiff complained of knee and elbow pain. (TR 239). The treating source noted that Plaintiff was recommended for an MRI but Plaintiff never followed up on it. (TR 239). The treating source also noted a decreased range of motion in the left shoulder. (TR 239). On January 12, 2005 Plaintiff complained of back, arm and feet pain, numbness in his left hand and pain in his left elbow joint. (TR 238). The treating source noted that Plaintiff was using a cane due to knee pain. (TR 238). Plaintiff reported left arm weakness. (TR 238).

On January 5, 2005 Plaintiff went to the emergency room because he was out of Vicodin. (TR 235). Plaintiff reported that his doctor "won't see him for another two months." (TR 235). The attending physician, Jayesh Patel, M.D. assessed Plaintiff with chronic arthritis, pain management and hypertension. (TR 236). Plaintiff was given Darvocet for pain. (TR 236).

On January 12, 2005 Vday Kumar completed a form that requested information about Plaintiff's exertional limitations. (TR 233-34). In response to yes/no questions, Dr. Kumar indicated that Plaintiff is not able to do work requiring him to stand and walk for six to eight hours a day, five days a week. (TR 233). Dr. Kumar noted that the limiting diagnoses were "severe DJD" of the left knee and spine, left arm weakness and the shoulder rotator cuff repair. (TR 233). He noted that these diagnoses were supported by Plaintiff's decreased range of motion in the spine and left knee, hammertoe deformity of the fifth toe and left arm weakness. (TR 233). Dr. Kumar also concluded that Plaintiff is not able do work requiring him to lift and/or carry objects weighing up to ten pounds for as much as five and a half hours per day and twenty pounds for up to two and a

half hours per day.  (TR 233).  Dr. Kumar noted that the limiting diagnoses and findings were left arm weakness and decreased range of motion in the left shoulder and left knee.  (TR 233).

**Mental Health Assessments**

Plaintiff consulted with Sudhir Lingnurkar, M.D. at Comprehensive Counseling Center, P.C. on January 22, 2001.  (TR 176).  While this is prior to the onset date in the ALJ's determination, notes from Comprehensive Counseling Center indicate that Plaintiff was taking Paxil as of December 6, 2002.  (TR 175).  On December 16, 2002 Dr. Lingnurkar evaluated Plaintiff and diagnosed him as follows: Axis I: 296.24; Axis II: Deferred; Axis III: None; Axis IV: Moderate; Axis V: Fair.  (TR 232).  The record also contains a Mental Residual Functional Capacity Assessment dated October 16, 2003 in which Plaintiff's ability to make occupational adjustments and social adjustments are noted as "fair."  (TR 230-31).  "Fair" is defined as "[a]bility to function in this area is seriously limited, but not precluded."  (TR 230).  Plaintiff's abilities to understand, remember and carry out complex job instructions and understand, remember and carry out detailed, but not complex job instruction were listed as "poor/none."  (TR 231).  "Poor or none" is defined as "no useful ability to function in this area."  (TR 230).  It is not possible to know from this form who completed the form and performed the examination, if any.  (TR 230-31).

On April 26, 2003 S. Rastogi, M.D., psychiatrist examined Plaintiff.  (TR 177).  Plaintiff reported to Dr. Rastogi that he had been in treatment for depression and was taking 20 mg of Paxil daily.  (TR 177).  Plaintiff denied any suicidal or homicidal ideations.  (TR 177).  Dr. Rastogi reported that Plaintiff's responses were slow and his motor activity was decreased.  (TR 178).  He noted that Plaintiff was in fair contact with reality and his "stream of mental activity is slow, organized and coherent."  (TR 178).  Dr. Rastogi noted that Plaintiff was alert and oriented, his recent memory was poor, his general fund of knowledge was limited, his abstraction ability was poor

and his motivation and insight seemed poor. (TR 180). Dr. Rastogi diagnosed Plaintiff with dysthymic disorder and a GAF score of 50. (TR 180). Plaintiff's prognosis was "guarded." (TR 180).

In a psychiatric Review Technique dated May 28, 2003, Donald Tate, Ph.D diagnosed dysthymic disorder. (TR 130). He noted mild restrictions in activities of daily living and maintaining social functioning, moderate limitation in maintaining concentration, persistence and pace, and no episodes of decompensation. (TR 137). Dr. Tate completed a Mental Residual Functional Capacity Assessment and concluded that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace with an unreasonable number and length of rest periods. (TR 141-42). Dr. Tate concluded that Plaintiff was not significantly limited in all other areas of "understanding and memory," "sustained concentration and persistence," "social interaction" and "adaptation." (TR 141-42). Dr. Tate noted in conclusion that Plaintiff "can do simple unskilled work." (TR 144).

## ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements, had not engaged in substantial gainful activity at any time relevant to the ALJ's decision, and suffered from discogenic and degenerative disc disease of the lumbar spine, arthritis in the left knee and left shoulder, gout, history of left rotator cuff surgery, hypertension, and depression, all impairments or a combination of impairments considered severe, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 25). Additionally, the ALJ found Plaintiff's testimony was only partially credible, he could not perform his past relevant work and

his exertional limitations do not allow him to perform the full range of light work, but concluded that he was capable of performing a significant number of light unskilled jobs in the economy.  (TR 26). Therefore he was not suffering from a disability under the Social Security Act.  (TR 26).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the

substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      he was not presently engaged in substantial gainful employment; and

(2)      he suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e).  If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his RFC, age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  *Id*. § 404.1520(f).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

As an initial matter, the ALJ must adopt the findings regarding the demands of Plaintiff's past relevant work, Plaintiff's date of birth and Plaintiff's education or work experience from the prior January 24, 2002 decision unless there is new and material evidence relating to the finding or there has been a change in the law, regulation or rule affecting the finding.  AR No. 98-3(6); *see also Dennard v. Sec'ty of Health and Human Servs.*, 907 F.2d 598 (6th Cir. 1990).  The prior ALJ decision found that Plaintiff has a high school education.  While the record contains conflicting

evidence of Plaintiff's education, the ALJ considered this, found that the discrepancies were "significant" and undermine Plaintiff's credibility, and adopted the previous finding. (TR 24).

***Whether the ALJ Erred in Failing to Address All of the Medical Evidence in the Record***

As an initial matter, the parties have briefed these issues to exhaustion. Plaintiff did not comply with the font requirements under E.D.Mich. LR 5.1. Had Plaintiff's brief been submitted in the minimal 12 point font size, it would likely far exceed the twenty-page limit. E.D. Mich. LR 7.1. In response, Defendant moved to submit a brief in excess of the twenty page limit and has done so. (Docket no. 25).

Plaintiff argues that the ALJ erred because he did not consider Plaintiff's allegedly diagnosed coronary artery disease, problems with his foot including hammertoe deformity requiring surgery, possible enchondroma/chondrosarcoma, chronic myofascial syndrome and functional illiteracy. (Pl.'s Br. at 10, docket no. 18). The ALJ is required to consider the applicant's medical situation as a whole. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Although the ALJ is not required to discuss every piece of evidence in the record, an ALJ should discuss evidence that, if believed, could lead to a finding of disability. In reviewing the ALJ's decision, the Court must scrutinize the record in its entirety. *See Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

The ALJ addressed the diagnosis of "possible enchondroma" in his decision and cited to a radiological study performed on June 16, 2004 which did not reveal a tumor. (TR 19, 189, 244). The ALJ specifically addressed the hammertoe deformity and stated that surgical correction was recommended but that Plaintiff's insurance would not cover the procedure. (TR 19, 216-17). With regard to the alleged diagnosis of coronary artery disease, the ALJ extensively discussed Plaintiff's cardiac health. (TR 20). The ALJ cited to an April 16, 2003 echocardiography which showed only moderate concentric left ventrical hypertrophy and no other significant findings and an August 6,

12

2003 Dobutine Echocardiography which showed "[n]o chest pain or arrhythmia" but was nondiagnostic due to submaximal heart rate. (TR 20, 203-04). The ALJ also referenced follow-up management for Plaintiff's hypertension, medication adjustments and the lack of evidence of complications, hospitalizations or emergency room treatment related to hypertensive complications. (TR 20). The ALJ also noted Dr. Bedia's conclusion that Plaintiff's chest pain was atypical and caused by movement of the chest. (TR 19, 181-82). The ALJ's decision addresses each of the medical issues which Plaintiff alleges in his brief that the ALJ did not consider, with the exception of the diagnoses of chronic myofascial syndrome and illiteracy. There is only one notation in the record of "chronic myofascial syndrome", when Plaintiff presented at the Sinai-Grace Hospital on March 31, 2003 with upper back and shoulder pain. (TR 212). The Plaintiff does not point to any further evidence in the record regarding the one-time notation of myofascial syndrome that would lead to a determination of disability.

Plaintiff alleges that the ALJ failed to consider his alleged functional illiteracy. (Pl.'s Br. at 11). Plaintiff relies on an aptitudinal evaluation performed on September 8, 2005 by Samuel Goldstein, Ph.D, Licensed Psychologist. (TR 257-58). This evaluation was administered after the ALJ's decision of August 19, 2005 and was submitted to the Appeals Council with Plaintiff's request for review. (TR 257-74). "[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* "[T]he burden of showing that a remand is appropriate is on the claimant." *Id.* Evidence is new if it was "not in existence or available to the claimant at the time of the

13

administrative proceeding." *Id.* The "evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* To show good cause, a claimant must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citations omitted). Under the Medical-Vocational Guidelines, Pt. 404, Subpt. P, App. 2, a finding that Plaintiff is illiterate would direct a result of "disabled" in light of the ALJ's other findings. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 2, 202.09. However, the record contains contradictory evidence that Plaintiff can read and write, including Plaintiff's testimony that he can do so and his disability report in which he indicates that he completed forms as part of his prior work. (TR 87-88, 280-81). Plaintiff has not established that there was a "reasonable probability" that "the Secretary would have reached a different disposition of the disability claim if presented with [this] evidence." *Id.* Further, Plaintiff provided no justification for failing to provide this information for inclusion in the hearing before the ALJ. Plaintiff had notice with the January 24, 2002 decision that the Commissioner found that Plaintiff had a high school education. (TR 45). Plaintiff applied for benefits and supplemental income for the second time on February 21, 2003. The ALJ hearing was not held until January 19, 2005. Plaintiff did not show good cause for his failure to include this evidence prior to the hearing or the August 19, 2005 decision. For these reasons a remand is not warranted under 42 U.S.C. § 405(g) for consideration of new evidence and the ALJ did not err in failing to consider Plaintiff's alleged illiteracy. The ALJ's findings regarding Plaintiff's impairments are supported by substantial evidence.

### *Whether the ALJ Complied with SSR 96-7p*

Plaintiff alleges that the ALJ failed to comply with SSR 96-7p which requires him to explain credibility determinations. "[A]n ALJ's findings based on the credibility of the applicant are to be

accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The ALJ found that Plaintiff's subjective complaints are not fully credible. (TR 21). The ALJ stated that although Plaintiff "has medical conditions that could reasonably be expected to result in some degree of functional limitation, his complaints of the severity of his pain, the extent of inability to move about, and his symptoms of depression are out of proportion to the objective findings." (TR 21). The ALJ thus limited his credibility findings to these areas. The ALJ then cites to specific reasons in the record for his credibility determination and relies on Plaintiff's medical history, treatment and response to treatment. (TR 21). The ALJ stated that the "radiological studies show mild degenerative changes and Claimant is treated conservatively with no recommendations for physical therapy or surgery. The progress treating notes indicate that his gout is generally stable with medication. He has required no emergency room treatment or hospitalization for his mental health condition." (TR 21). The ALJ provided specific reasons for finding Plaintiff's allegations not fully credible and the findings are supported by substantial evidence.

***Whether the ALJ's Finding that Plaintiff Could Perform a Limited Range of Light Work Activity Was Supported By Substantial Evidence in the Record***

In the January 24, 2002 decision, the ALJ found that Plaintiff had the RFC to "perform the full range of light work." (TR 45). "When adjudicating a subsequent disability claim with an

unadjudicated period arising under the same title of the Act as the prior claim," the ALJ must adopt

the RFC finding from the final decision on the prior claim unless there is new and material evidence

relating to the finding or a change in the law affecting the finding. AR No. 98-4(6); *see also*

*Drummond v. Comm'r of Social Sec.*, 126 F.3d 837 (6th Cir. 1997). The ALJ found that there was

no evidence that Plaintiff's medical condition improved after January 24, 2002. (TR 22). The ALJ

noted that Plaintiff had "degenerative changes in his left shoulder and left knee and foot problems

that reasonably require some additional limitations." (TR 23). The ALJ found that Plaintiff has the

following RFC:

> [T]o perform a limited range of light work activity, as light is defined in the
> Regulations, with the following specific functional limitations: can lift and carry 10
> pounds frequently and 20 pounds occasionally; requires a sit/stand option; can
> perform postural activities occasionally; is moderately limited in reaching above the
> shoulder level with the left upper extremity; requires simple job assignments with
> routine production and stress. (TR 25).

Plaintiff alleges that the ALJ improperly rejected Dr. Kumar's January 12, 2005 opinion that

Plaintiff could not stand and walk for six to eight hours per day and cannot lift and/or carry objects

weighing up to ten pounds as much as 5.5 hours per day and twenty pounds up to 2.5 hours per day.

(TR 233). Although it is well settled that the opinions and diagnoses of treating physicians are

generally accorded substantial deference, there is no indication from the record that Dr. Kumar is

a "treating physician" whose opinion is entitled to controlling weight. *See* 20 C.F.R. §

404.1527(d)(2). The Commissioner gives more weight to opinions from treating sources because

they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture"

of the medical impairment." 20 C.F.R. § 404.1527(d)(2). As the ALJ noted, although Dr. Kumar's

"narrative explanation of the general findings is not inconsistent with Claimant's medical history,"

it is not clear from the record when and for how long Dr. Kumar treated Plaintiff. (TR 22, 233-34).

Plaintiff argues that he should not be penalized for having no access to a "one treater source" for health care because he is "poor" and that it is not clear from the medical records on which no doctor's name appears that Dr. Kumar was not the treating physician. (Pl.'s Br. at 15, docket no. 18). However, Plaintiff does not allege that Dr. Kumar treated him more than once.

Further, the ALJ gave less weight to Dr. Kumar's opinion because it was provided on a form which allowed for "yes" and "no" answers in response to questions about Plaintiff's exertional limitations and did not allow Dr. Kumar to make other choices. (TR 22). The ALJ found that Dr. Kumar did not provide specific clinical findings in support of his exertional limitation conclusions. (TR 233). He only generally lists the diagnoses that would limit Plaintiff's capacity in each exertional area. (TR 233-34). The ALJ's determination that Dr. Kumar's opinion, as expressed through a pre-typed form, was not entitled to controlling weight is not patently wrong where the ALJ thoroughly discussed the medical evidence throughout his opinion and supported it with substantial evidence. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

Plaintiff further alleges that the ALJ "ignored" Dr. Rastogi's assessment which concluded Plaintiff had a GAF score of 50. The ALJ cited extensively to Dr. Rastogi's April 26, 2003 evaluation and therefore considered the evaluation in his determinations. (TR 20). *See Hoelck v. Comm'r of Social Sec.*, 2008 WL 64705 (5th Cir. Jan. 7, 2008) (citing extensively to that medical visit suggested that the ALJ considered it.).

The ALJ properly relied on Plaintiff's prior RFC and incorporated additional non-exertional limitations in light of objective medical evidence of degenerative changes in Plaintiff's left knee and shoulder and foot problems. The ALJ's RFC is supported by substantial evidence in the record.

***Whether the ALJ's Finding that Plaintiff Could Perform A Significant Number of Jobs in the Economy is Supported by Substantial Evidence.***

The ALJ properly determined Plaintiff's RFC based on all of the medical evidence of record and found that he could perform "a limited range of light work activity." (TR 23). The ALJ properly referenced the regulations, Pt. 404, Subpt. P, App. 2, Rule 201.14 (age 50-54), 20 C.F.R. §§ 404.1569 and 416.969 as a framework which would direct a conclusion of "not disabled" and further relied on the VE's testimony to determine what effect Plaintiff's non-exertional limitations would have on the number of jobs available in the economy. (TR 26).

Plaintiff alleges that the VE's testimony was based on a flawed hypothetical question and that the ALJ erred by failing to address a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). (Pl.'s Br. at 17-19, docket no. 18). In a hypothetical question posed to the vocational expert ("VE"), an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Serv.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ posed the following hypothetical question to the ALJ:

> [T]aking Claimant's age, education, and work experience into account, assume that such a person has the exertional limitation of lifting 20 pounds occasionally, 10 pounds frequently and pose further limitations of occasional pushing and pulling with the left upper and lower extremities, occasional reaching above the shoulder with the left upper extremity. We had sit/stand option, occasional climbing, balancing, stooping, crouching, kneeling, and crawling, jobs that would provide for routine production and stress and simple job assignments. And if we put this individual at the semiskilled level -- no, strike that. We put him at the unskilled level. Could such a person be expected to perform Claimant's past relevant work? (TR 298).

The VE responded that such a person could not perform Plaintiff's past relevant work, but that there would be other "unskilled jobs that would provide for a sit/stand option, lifting up to 20 pounds." (TR 299). The jobs include inspection work and possible sorting, packaging and assembly

jobs. (TR 299). The jobs number approximately 10,000 in the greater metropolitan area and 20,000 statewide. (TR 299).

The ALJ's hypothetical incorporated all aspects of Plaintiff's RFC and, in fact, it appears from the testimony that the VE incorporated a lower educational level than a high school education. (TR 297). The VE testified to an educational level of "limited education," "less than high school but greater than sixth grade." (TR 297).

Plaintiff argues that where the VE was asked to assume that Plaintiff's testimony was credible in the exertional terms described, the VE's response precluded any employment. However, the ALJ found that Plaintiff's allegations were not wholly credible. (TR 21). The ALJ did not err in declining to accept the VE's testimony where it was based on the assumption that Plaintiff's testimony was entirely credible. *See Varley v. Sec'ty of Health and Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987).

Plaintiff next alleges that this hypothetical does not incorporate Plaintiff's non-exertional and exertional limitations as opined by Dr. Kumar and the state agency psychiatrist and nonexamining psychologist. (Pl.'s Br. at 17, docket no. 18). However, the hypothetical incorporates the Plaintiff's RFC and limitations as determined by the ALJ. The ALJ is responsible for assessing Plaintiff's RFC based on all of the relevant evidence in the record. 20 C.F.R. § 404.1546(c). As discussed above, the ALJ's findings regarding Plaintiff's impairments are supported by substantial evidence. Therefore, the ALJ did not err in failing to incorporate all of the non-exertional and exertional limitations opined in the record.

Finally, Plaintiff argues that the VE failed to address an unresolved conflict between the DOT and the VE's testimony. The VE testified that the DOT does not address a sit/stand option within jobs. The VE testified that the jobs he identified were "designed to be done seated," but were

not in any way precluded from being performed in a standing position. (TR 300[3]). The ALJ reasonably explained the discrepancy with the DOT and relied on his experience that the jobs could be performed in light of Plaintiff's sit/stand limitation.

The ALJ's finding that there are a significant number of jobs in the economy which Plaintiff can perform is supported by substantial evidence in the record including the VE's testimony.

## CONCLUSION

The ALJ's opinion is supported by substantial evidence. Defendant's Motion for Summary Judgment (docket no. 23) should be granted, that of Plaintiff denied and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

---

[3] Page 300 was omitted from the original filing and was later provided as a supplement. (Docket no. 26).

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 07, 2008          s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 07, 2008          s/ Lisa C. Bartlett
                                    Courtroom Deputy